UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIERRA RAE YSLAS,

Plaintiff,

v.

MARKWAYNE MULLIN et al.,

Defendants.

Case No. 26-11752
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [12]**

Sierra Rae Yslas is a United States citizen. Her husband, Jose Herrera-Paredes, is not. Upon his arrival to the U.S., Herrera-Paredes received temporary protected status. One day before that status expired, on November 6, 2025, Yslas filed an I-130 petition to have Herrera-Paredes classified as her "immediate relative," and on December 15, 2025, Herrera-Paredes filed an I-485 petition to adjust his status to that of a lawful permanent resident. "To succeed on the I-130 petition, the United States citizen must prove that she is a citizen, that she has a legal marriage to the noncitizen, and that they have a bona fide marriage." (ECF No. 1, PageID.7.) While Yslas' application was pending, the U.S. Department of Homeland Security (DHS) detained Herrera-Paredes and placed him in removal proceedings.

It is the couple's hope that Herrera-Paredes' adjustment of status can be granted before he is deported. For that to happen, U.S. Citizenship and Immigration Services (USCIS) must first adjudicate Yslas' I-130 petition to re-classify him as her

immediate relative. So, the day after Herrera-Paredes was detained, Yslas asked USCIS to expedite its review of her I-130 petition. That request was denied. Desperate to move things along, Yslas filed this lawsuit, claiming USCIS' delay in processing her I-130 petition violates the Administrative Procedure Act (APA), and seeking a writ of mandamus compelling USCIS to fast-track its review of that petition. Defendants move to dismiss the petition for lack of jurisdiction and for failing to state a claim upon which relief can be granted. (*See generally* ECF No. 12.)

The bureaucratic maze the couple presently navigates is a daunting one and their desire for a speedy resolution understandable. Hopefully those tasked with making the ultimate decision also appreciate the consequences of too much more delay. Unfortunately, the present circumstances do not empower this Court to grant the extraordinary remedy of mandamus. For the reasons that follow, Defendants' motion to dismiss the petition (ECF No. 12) is granted in part and Yslas is granted leave to amend her complaint.

## I.

The Court starts with Defendants' contention that Yslas' request for mandamus should be dismissed for lack of subject matter jurisdiction. *See Am. Telecom Co., LLC v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination.") (citation omitted). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Crugher v. Prelesnik*, 761 F.3d 610, 613 (6th Cir. 2014) (citing *Golden v. Gorno Bros.*,

410 F.3d 879, 881 (6th Cir. 2005)). A facial attack, like the one Defendants make here, tests the pleading's sufficiency, not the veracity of its allegations. *Stout v. United States*, 721 F. App'x 462, 465 (6th Cir. 2018). So the Court "takes the allegations in the complaint as true" and "[i]f those allegations establish federal claims, jurisdiction exists." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

**A.**

"Mandamus jurisdiction in federal courts is codified at 28 U.S.C. § 1361, which provides that '[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 491 (6th Cir. 2011) (quoting 28 U.S.C. § 1361).

But mandamus is a "drastic and extraordinary remedy" that is "only to be reserved for extraordinary situations." *Maftoum v. Chavez*, No. 07-12819, 2007 U.S. Dist. LEXIS 80491, at *3 (E.D. Mich. Oct. 31, 2007) (citing *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). Namely, the remedy is available only if each of three requirements are met: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Carson*, 633 F.3d at 491. Defendants say Yslas satisfies none of them.

While Defendants' Rule 12(b)(1) motion is aimed only at Yslas' mandamus claim, the analysis necessarily overlaps with the Court's merits analysis of the APA claim. That is because "[w]hen a petitioner seeks both mandamus relief and relief under the APA, courts apply the same principles and standards both to determine jurisdiction and to assess the merits." *Nelson v. United States*, 107 F. App'x 469, 471 (6th Cir. 2004). And "[t]he existence of jurisdiction under section 1361 is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987).

**1.**

Defendants' arguments as to the first two mandamus requirements are the same: because the agency's continued review of Yslas' I-130 petition falls within the normal range of processing times, she cannot show that she has a clear right to relief (factor one), nor can she show that Defendants have a clear duty to act (factor two). (ECF No. 12, PageID.106.) Yslas counters that the APA requires USCIS to review her I-130 petition within a "reasonable time" and that the eleven months (six months at the time of filing) her petition has been under review is unreasonable. Thus, says Yslas, she has a clear right to relief. (ECF No. 14, PageID.155–157.) The Court need not decide this issue for purposes of the mandamus analysis, because the third factor—whether Yslas has an adequate remedy aside from mandamus—is dispositive.

Numerous courts have held that when a mandamus claim and APA claim are brought together, the APA claim provides an adequate remedy that defeats mandamus jurisdiction. *See, e.g.*, *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) ("Because 'mandamus relief and relief under the APA are 'in essence' the same,' when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, we may elect to analyze the APA claim only.") (citation omitted); *Stone v. Blinken*, No. 23-12181, 2024 U.S. Dist. LEXIS 132755, at *7 (E.D. Mich. July 26, 2024) (dismissing mandamus claim for lack of jurisdiction given availability of an APA remedy); *Telukunta v. Mayorkas*, No. 21-10372, 2021 U.S. Dist. LEXIS 111676, at *3 (E.D. Mich. June 15, 2021) (same). And in any event, as addressed below, Yslas' APA claim fails, so her mandamus claim must as well. *See Fawaz v. United States Dep't of State*, 836 F. Supp. 3d 750, 758 (E.D. Mich. 2026) ("Because Farwaz could not establish unreasonable delay under the APA, her request for mandamus fails for the same reasons.").

Defendants' motion to dismiss under Rule 12(b)(1) is thus granted as to Yslas' mandamus claim.

## II.

Defendants next move to dismiss the APA claim under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Yslas fails to plausibly allege unreasonable delay in adjudication of the I-130 petition.

In resolving a motion under Rule 12(b)(6), the Court "construes the complaint in the light most favorable" to Yslas and determines whether her "complaint

'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *See Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Yslas does not need to provide detailed factual allegations to survive a motion to dismiss, *see HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but her allegations must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**B.**

At the outset, the Court notes that "[u]nreasonable delay claims are fact-intensive and thus sit 'uncomfortably at the motion to dismiss stage.'" (ECF No. 14, PageID.150 (citing *Barrios Garcia v. Dep't of Homeland Sec.*, 25 F.4th 430, 454 (6th Cir. 2022).) Nevertheless, many courts, including in this District, find resolution of these claims at the motion to dismiss stage possible. *See, e.g.*, *Fawaz*, 836 F. Supp. 3d at 755 ("[I]t is appropriate . . . at this [motion to dismiss] stage to assess whether the Plaintiff has alleged sufficient facts to state a plausible claim for unreasonable delay." (collecting cases)); *Stone*, 2024 U.S. Dist. LEXIS 132755, at *9 ("To begin, Plaintiff asserts it is not appropriate to consider [an unreasonable delay claim] . . . at the motion-to-dismiss stage. The Court disagrees."). So the Court will proceed to analyze whether Yslas' complaint states a plausible claim for unreasonable agency delay.

"When resolving whether an agency action has been unreasonably delayed, the federal courts consider six factors from *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)." *Barrios Garcia*, 25 F.4th at 451.Those "*TRAC* factors" are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 451–52 (citation omitted). The Court addresses the factors in turn.

**1.**

The first and second factors, often "considered together," *Fawaz*, 836 F. Supp. 3d at 756, "measure whether the time taken to make a decision was reasonable and in line with Congress' instructions for the agency." *Nagi v. Blanche*, No. 25-11967, 2026 U.S. Dist. LEXIS 83813, at *8 (E.D. Mich. Apr. 15, 2026).

"Many courts consider the first *TRAC* factor—that the time agencies take to make decisions must be governed by a rule of reason—to be the most important." *Id.* (citation omitted). This factor asks whether there is "any rhyme or reason—congressionally prescribed or otherwise—for [the] agency's delay." *Stone*, 2024 U.S. Dist. LEXIS 132755, at *9–10 (citation omitted). The second factor, whether "'Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed,' . . . 'may supply content for [the agency's] rule of

reason.'" *Id.* at *7 (quoting *TRAC*, 750 F.2d at 80). In the absence of statute or regulation dictating a specific timetable for adjudication, "courts typically turn to case law as a guide" to evaluate the first two factors. *Yafai v. U.S. Dep't of State*, No. 23-13199, 2024 U.S. Dist. LEXIS 97482, at *16 (E.D. Mich. May 31, 2024) (citation omitted); *see also Janay v. Blinken*, 743 F. Supp. 3d 96, 114 (D.D.C. 2024) ("Because there is no statutory or regulatory framework within which the Department of State must adjudicate I-130 applications, the Court turns to case law as its guide.").

At first glance, the first factor would appear to favor Defendants. The system of adjudication USCIS applies to I-130 petitions—"a first in first out [FIFO] basis with priority based on country-by-country visa availability" (ECF No. 12, PageID.100)—has been widely accepted as a valid rule of reason. *See, e.g.*, *Prajapati v. Sec'y, United States Dep't of Homeland Sec.*, No. 25-85, 2026 U.S. Dist. LEXIS 216279, at *10 (S.D. Ohio Sept. 23, 2026); *Lin v. Garland*, No. 24-2268, 2025 U.S. Dist. LEXIS 12202, at *3 (E.D.N.Y. Jan. 22, 2025) (collecting cases); *Kiani v. U.S. Citizenship & Immigr. Servs.*, No. 24-00422, 2024 U.S. Dist. LEXIS 220724, at *14 (C.D. Cal. Dec. 5, 2024) (collecting cases) ("Courts have likewise found that processing applications in the order they were filed is a 'rule of reason'"); *Verma v. U.S. Citizenship & Immigr. Servs.*, No. 20-3419, 2020 U.S. Dist. LEXIS 239157, at *6 (D.D.C. Dec. 18, 2020) (collecting cases).

But in their motion to dismiss, Defendants explained that USCIS publicly posts the average time by which 80% of I-130 Petitions filed by a U.S. citizen for their spouse are adjudicated. (ECF No. 12, PageID.95.) And in September 2026, when the

Defendants filed their motion, that time frame was 80 months. (*Id.*) It appears to have only increased in the interim. Today, USCIS projects that 80% of petitions will be processed within 83.5 months. *See* USCIS, *Case Processing Times*, https://egov.uscis.gov/processing-times.[1] Said differently, 20% of all I-130 petitions are taking longer than 6 years to adjudicate. Thus, in her response brief, Yslas questions whether the FIFO rule of reason is actually being applied to I-130 petitions, pointing out that the 80-month processing figure appears to represent a significant departure from the median wait times reported in recent years. (ECF No. 14, PageID.161.)

More specifically, Yslas provides an exhibit showing that the national median wait time for immediate relative I-130 petitions ranged between 10.2 to 14.4 months in 2021–2026. (ECF No. 14-3, PageID.177–178.) In Yslas' view, this ballooning in wait times suggests that USCIS must not be applying the first-in, first-out priority rule to I-130 applications—or if it is, that this approach is not truly a rule of reason if it can allow for such dramatic fluctuations in processing time. (*See* ECF No. 14, PageID.161.)[2] Defendants' only response to this argument is that Yslas' petition "will likely be adjudicated far earlier than [the] projected [80 month] time." (ECF No. 15, PageID.188.)

[1] "[A] court may, in undertaking a 12(b)(6) analysis, take judicial notice of 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *Erulandi v. United States Citizenship & Immigr. Servs.*, No. 26-1086, 2026 U.S. Dist. LEXIS 250289, at *2 n.5 (N.D. Ohio Nov. 2, 2026) (quoting *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023)).

[2] While these statistics are not part of the complaint, neither party objects to their use. Finding them integral to the allegations, the Court will consider them.

The parties, though, are not conducting an apples-to-apples comparison. Yslas relies on the national median wait times from prior years. The government relies on the wait time by which 80% of applications are processed. While the current "median" wait time is somewhere below 80 months, how far below is unclear. Neither party provides enough information for the Court to evaluate the current median wait time, if and when it expanded, and if so, why.

At this stage, however, Yslas need only plead facts sufficient to make a plausible claim that no rule of reason is being applied for this first factor to tilt her way. *See, e.g.*, *Issack v. Blinken*, No. 24-4219, 2025 U.S. Dist. LEXIS 167522, at *15 (D. Minn. Aug. 28, 2025) ("Plaintiffs have the burden of alleging facts that are sufficient to make plausible their claim that *no* 'rule of reason' governs the time that the State Department is taking to render a decision.") (emphasis original); *see also* *Eun Young Park v. Edlow*, No. 26-504, 2026 U.S. Dist. LEXIS 158078, at *14 (D.D.C. July 26, 2026) (noting that plaintiff can challenge whether a rule of reason is being applied by alleging facts supporting that theory in their complaint or briefing). And "courts often look to the length of delay as a rough yardstick to determine whether the first-in, first-out rule is actually being applied." *Ahmed v. Blinken*, No. 23-11860, 2024 U.S. Dist. LEXIS 164524, at *12 (E.D. Mich. Sept. 12, 2024) (quoting *Ebrahimi v. Bitter*, No. 22-00788, 2023 U.S. Dist. LEXIS 98199, at *6 (M.D. Tenn. June 6, 2023).

True, Yslas has not identified any examples of cases processed out-of-order or in contravention of FIFO. *See, e.g.*, *Barrios Garcia*, 25 F.4th at 453 (finding that plaintiff "adequately alleged that no rule of reason govern[ed]" the U-Visa application

process by alleging "that 'many U-visa applications were filed after but decided before" hers). But the sheer increase in the present delay when compared to the historical figures does raise questions about the "rhyme or reason" underlying it. *See Stone*, 2024 U.S. Dist. LEXIS 132755, at *9*; see also Gutta v. Renaud*, No. 20- 06579, 2021 U.S. Dist. LEXIS 27913, at *8 (N.D. Cal. Feb. 12, 2021) ("[W]hether USCIS actually follows its purported rule of reason is a question of fact unsuitable for determination at the pleadings stage."); *Dumlu v. Edlow*, No. 25-00056, 2025 U.S. Dist. LEXIS 225677, *17–19 (C.D. Cal. Oct. 2, 2025) ("'the evidence supplied by Defendant leaves certain unanswered questions about the current circumstances that are critical to the determination of whether Defendant's approach to processing asylum application[s] . . . constitutes a 'rule of reason.''") (quoting *Munoz-Barba v. Mayorkas*, No. 23-03675, 2024 U.S. Dist. LEXIS 98299, at *39–43 (N.D. Cal. June 3, 2024)); *Henawy v. Mayorkas*, No. 24-780, 2025 U.S. Dist. LEXIS 45392, at *5–7 (M.D. Fla. Mar. 13, 2025) (finding the Court lacked sufficient information to evaluate the *TRAC* factors at the motion to dismiss stage where "the Court lacks insight as to how [the stated rule of reason] is implemented.")

Defendants' briefing suggests that the reason for the sudden increases in wait times are external to USCIS, pointing to increased filings and decreased resources. (ECF No. 12, PageID.94.) To be sure, other courts have found that evaluation of a reasonable delay must look to "the complexity of the task at hand . . . and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). And some courts have noted that USCIS

operates with limited resources. *See, e.g.*, *Mirzajanov v. United States Citizenship & Immigr. Servs.*, No. 26-0107, 2026 U.S. Dist. LEXIS 145379, at *12 (D. Md. July 1, 2026) ("The agency operates in an environment of limited resources, and how it allocates those resources to address the burden of increasing claims is a calculation that courts should be loath to second guess") (quoting *Blanco de Belbruno v. Ashcroft*, 362 F.3d 272 (4th Cir. 2004).)

But the Court is struggling with the fact that much of the parties' arguments regarding this first *TRAC* factor are outside the scope of the allegations in the petition. *See, e.g.*, *H. Ji. v. United States Citizenship & Immigr. Servs.*, No. 24-4815, 2026 U.S. Dist. LEXIS 11899, at *11–12 (E.D.N.Y. Jan. 22, 2026) (rejecting Defendant's arguments in support of FIFO as a rule of research where they "necessarily rest[] on facts outside of the Amended Complaint"); *see also Mostafa Ahmed Abdelhamed Dawod v. Garland*, No. 2303211, 2023 U.S. Dist. LEXIS 140801, at *20 (rejecting plaintiff's arguments against Defendant's proffered rule of reason that "rel[ied] on evidence outside of the Complaint and not subject to judicial notice"). Yslas' petition merely alleges, in a conclusory manner, that "[a]pplying the *TRAC* factors to this case, there is no doubt that the Defendant's delay here is unreasonable." (ECF No. 1, PageID.11.) Not until her response to the present motion did she allege that Defendants are not applying the FIFO rule of reason. (ECF No. 14, PageID.161–162.) This is likely because the problem was not brought to her attention until Defendants presented the numbers in their motion to dismiss.

Accordingly, on the basis of the current petition, the first TRAC factor favors the government. But the Court will allow Yslas leave to amend to address, at a minimum, the Defendants' updated wait time data. *See Dayabaran v. Edlow*, No. 26-02343, 2026 U.S. Dist. LEXIS 168862, at *12 (N.D. Cal. July 29, 2026) (granting plaintiff leave to amend at the motion to dismiss stage to address the government's modified rule-of-reason theory).

"Because '[t]he most important is the first factor, the 'rule of reason,'' and the Court cannot conclusively decide that factor and so grants leave to amend, the analysis could stop here." *Id.* (citation omitted). Nevertheless, the Court will "briefly addresses the remaining factors to provide guidance for any other amendments Plaintiffs wish to make." *Id.* at *14.

**2.**

The second TRAC factor, inextricably intertwined with the first, "may supply content for [the agency's] rule of reason." *Fawaz*, 836 F. Supp. at 755 (alteration original, citing *TRAC*, 750 F.2d at 80). Where, as here, there is no governing "statutory or regulatory time frame" by which petitions must be adjudicated, courts typically turn to "case law as a guide" to evaluate the reasonableness of the delay. *Id.* (quoting *Yafai*, 2024 U.S. Dist. LEXIS 97482, at *5) Yslas points to language in the INA that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). But this Circuit has never interpreted the "sense of Congress" language as a strict I-130 processing deadline. *See, e.g.*, *Barrios Garcia*, 25

F.4th at 454. And the strong weight of authority has found that I-130 processing times around three to five years are reasonable. *See*, *e.g.*, *Ahmed*, 2024 U.S. Dist. LEXIS 164524, at *12 (collecting cases); *Tekle v. Blinken*, No. 21-1655, 2022 U.S. Dist. LEXIS 78493, at *9 (D.D.C. Apr. 29, 2022) (collecting cases); *Mostafavi v. Rubio*, No. 25-4382, 2026 U.S. Dist. LEXIS 189280, at *19 (S.D.N.Y. Aug. 19, 2026) (collecting cases); *Nayereh Azam Rafizadeh v. Olson*, No. 25-01246, 2026 U.S. Dist. LEXIS 2771, at *6–7 (C.D. Cal. Jan. 7, 2026) (collecting cases); *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020); *Yafai*, 2024 U.S. Dist. LEXIS 97482, at *16–17.

So, assuming this delay is governed by an applied rule of reason, this factor would favor the government. But conversely, if the reason for this delay is not attributable to a rule of reason, this factor may favor Yslas. *See, e.g.*, *Qazi v. Rubio*, No. 26-02668, 2026 U.S. Dist. LEXIS 123200, at *23–25 (S.D.N.Y. June 3, 2026) (explaining that reasonableness of delay at step 2 must be considered in relationship to whether there was a " clearly articulated rule of reason to justify such a processing delay," or if the delay was attributable to a mere "lack of diligence" by the agency).

**3.**

The third and fifth factors turn on "health, welfare, and prejudice" and "both consider the effects of delay." *Fawaz*, 836 F. Supp. 3d at 756 (citations omitted). These effects can include "concrete injuries to [plaintiffs'] familial and financial interests as a result of the delay." *Id.* (citation omitted).

The familial injuries Yslas and Herrera-Paredes allege here are clear. If Yslas' I-130 application is not promptly adjudicated, her husband may be removed from the

country before having a chance to seek adjustment of his status. This potentially unnecessary separation is a significant consequence that the Court does not take lightly.

Defendants point out, however, that despite an ongoing removal proceeding, Herrera-Paredes has not yet been removed and, presently released on bond, he continues to live a relatively normal life with Yslas (ECF No. 15, PageID.189), which some courts have found tilts these factors in the government's favor. *See, e.g.*, *Lajin v. Radel*, No. 25-101, 2019 U.S. Dist. LEXIS 125118, at *4, 11 (S.D. Cal. July 26, 2019) (finding that the third and fifth factors favor Defendants because "Plaintiff is able to live his life during the delay without the additional concern of removal or inability to work"); *Memon v. Blinken*, No. 22-0754, 2023 WL 1438396, at *3 (D.D.C. Feb. 1, 2023) ("In general, concerns about separation from family . . . are insufficient to weigh in favor of the plaintiff."). But this ignores Yslas' allegation that "if Mr. Herrera-Paredes is removed, he will be ineligible for an immigrant visa because the Department of State is refusing to adjudicate visa applications based on the national origin of the applicants." (ECF No. 1, PageID.3.) *See Arab v. Blinken*, 600 F. Supp. 3d 59, 71 (D.D.C. 2022) ("[T]he prolonged and indefinite separation of spouses may place health and welfare at stake." (internal quotation marks omitted)).

Defendants also point out that Yslas and Herrera-Paredes' current situation is not uncommon. (ECF No. 12, PageID.103 (citing cases).) But this Court is reluctant to diminish the emotional distress alleged by Yslas and Herrera-Pardes simply because their situation is not unique and they have not yet been separated even

though the threat remains imminent. So the Court finds that the third and fifth factors are neutral.

**4.**

"Courts typically afford 'great weight' to the fourth factor, which considers the effect the relief requested would have on other agency activities of a similar or higher priority." *Fawaz*, 836 F. Supp. 3d at 757 (citations omitted). "Other courts in this district have found that this factor favors defendants when 'a judicial order putting a plaintiff's application at the head of the queue would move all others back one space and produce no net gain.'" *Id.* (citations omitted). Yslas' only argument on this score is that given the amount of time she has already waited, and the agency's previously reported median wait time of 12.9 months, her advancement to the front of the line would not skip over too many others. (ECF No. 14, PageID.165–166.) But this assumes that DHS' median wait times have remained the same. As noted above, it seems they have not. So the data that both parties are relying on, and that the Court must accept as true, suggests that expedited review of Yslas' petition likely would place her ahead of others.

Additionally, it is Yslas' burden to allege facts showing that Defendants "have treated [her] differently than any other [I-130] applicants facing similar circumstances" and there is a "basis to believe she was singled out for slower adjudication." *Fawaz*, 836 F. Supp. 3d at 757 (citations omitted). Yslas' complaint does not do so. And her vague speculation in her response brief that, if expedited, her

petition would not harm *too* many others, is insufficient to meet this burden. Accordingly, this factor favors Defendants.

**5.**

As to the sixth *TRAC* factor, the Court "need not find any impropriety lurking behind agency lassitude" to satisfy an unreasonable delay claim. *See Fawaz*, 836 F. Supp. 3d at 757. Where no bad faith is alleged, courts often find this factor neutral.

Yslas' complaint contains no allegations of impropriety. But Yslas argues in her response brief that the delay is at least partially attributable to USCIS' animus toward noncitizens from certain countries, including Venezuela which is Herrera-Paredes' country of origin.(ECF No. 14, PageID.166.) In support, she notes the temporary freeze USCIS placed on asylum applications from several countries, including Venezuela. (*Id.*) If such allegations are in an amended complaint they may permit a reasonable inference of animus which could tilt this factor toward Yslas.

Based on Yslas' current complaint, factors one, two, four, and six favor Defendants, while factors three and five are neutral. Accordingly, the government's motion to dismiss is GRANTED and Yslas's complaint is DISMISSED without prejudice and with leave to amend because the critical factors cannot be balanced conclusively absent more fulsome briefing.

**III.**

Because Yslas initially fails to state a claim under the APA, and lacks jurisdiction to bring a mandamus claim, her request for declaratory relief must also fail. (ECF No. 1, PageID.9.) *Yafai*, 2024 U.S. Dist. LEXIS 97482, at *18 ("Where, as

here, the underlying claim fails, there is nothing for the court to declare[,]" so that claim "must be dismissed.").

So too for Yslas' requests for fees and costs. (ECF No. 1, PageID.14.) Yslas' complaint seeks recovery under the Equal Access to Justice Act (EAJA), which "provides for an award of attorney fees to a party prevailing against the United States in a civil action when the position taken by the Government is not substantially justified and no special circumstances exist warranting a denial of fees." *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 445 (6th Cir. 2009) (citing 28 U.S.C. § 2412(d)(1)(A)). Because Yslas is not a "prevailing party" within the meaning of the EAJA, she is not entitled to fees. *See Yafai*, 2024 U.S. Dist. LEXIS 97482, at *18 n.3 ("Here, Plaintiffs are not prevailing parties and thus, are not entitled to fees under EAJA.").

**IV.**

For the reasons described above, Defendant's motion to dismiss is granted as to Yslas' mandamus claim due to lack of subject matter jurisdiction. Likewise, Yslas' APA, declaratory relief, and EAJA attorney's fees claims are dismissed without prejudice to re-filing in an amended complaint, which shall be filed within 14 days from entry of this order. Defendants shall respond in accordance with the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: November 10, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE